**BENEFICIAL INDIANA, INC., Appellant,**

v.

**JOY PROPERTIES, LLC, Appellee.**

**No. 02A05–1005–PL–260.**

Court of Appeals of Indiana.

Feb. 10, 2011.

Rehearing Denied April 7, 2011.

Matthew S. Love, Feiwell & Hannoy, P.C., Indianapolis, IN, Attorney for Appellant.

Michael A. Barranda, Burt Blee Dixon Sutton & Bloom, LLP, Fort Wayne, IN, Attorney for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Beneficial Indiana, Inc. ("Beneficial") appeals the trial court's order to the Allen County Treasurer and the Allen County Auditor (collectively, "the Auditor") that it disburse to Joy Properties I, LLC, ("Joy Properties") the surplus funds from the tax sale of real estate designated as Property PIN 020817401013000072 and commonly described as 3909 Castell Drive, Fort Wayne ("the real estate").

We reverse.

### ISSUE

Whether the trial court erroneously ordered disbursement of the surplus funds to Joy Properties.

### FACTS

On April 17, 2003, Ronald and Cheryl Osten executed a promissory note in the original principal sum of $103,156.45, naming Beneficial as the payee. Also on that date, the Ostens executed a mortgage which granted to Beneficial a security interest in the real estate. The mortgage was recorded on April 21, 2003.

The Ostens failed to pay their property taxes, causing the property to be eligible for the 2008 Allen County Tax sale. On November 12, 2008, a tax sale certificate to the real estate was issued to Plymouth Park Tax Services ("Plymouth Park") after its successful bid of $46,000.00. The real estate was not redeemed from the tax sale within the one year redemption period. Following the expiration of the one-year redemption period, and the granting of the tax deed to Plymouth Park, the Auditor was holding a tax sale surplus in the amount of $42,462.20.

On December 21, 2009, Beneficial filed a motion asking the trial court to issue an order directing the Auditor to hold the tax sale surplus funds pending further order of the court. Both the promissory note and recorded agreement were included with Beneficial's motion. Beneficial served the Ostens with a copy of the motion.

On December 28, 2009, the trial court set the matter for hearing on January 13,

2010. The notice of hearing was sent to the Ostens. At the hearing, Beneficial informed the trial court that the Ostens' mortgage was in default. According to an affidavit, the last Osten payment received was the one due on July 22, 2008, and Beneficial was owed an unpaid balance of $97,145.66, plus interest and other costs pursuant to the terms of the promissory note and mortgage. Following the hearing, the trial court issued an order dated January 13, 2010 directing the auditor to hold the surplus funds. A copy of the order was sent to the Ostens.

Two weeks later, on January 27, 2010, the Ostens executed a deed which "QUIT-CLAIM[ED] TO: JOY PROPERTIES I LLC" the real estate. (App.284.) The quitclaim deed was recorded on January 28, 2010.

On February 9, 2010, Beneficial filed a petition seeking an order from the trial court directing the Auditor to disburse the $42,462.20 surplus to Beneficial. The petition cited to Beneficial's "security interest" in the real estate, as evidenced by its earlier submission to the trial court of the promissory note and recorded mortgage; noted that a tax deed "ha[d] been or will be issued" and that the Auditor remained in possession of surplus proceeds resulting from the tax sale; asserted that its security interest "attached to the tax sale surplus"; and sought an order directing the Auditor to disburse the tax sale surplus to Beneficial. (App.269, 270).

On February 12, 2010, the Auditor informed the trial court that a tax deed had been issued "to the tax sale purchaser." (App.278). However, the Auditor also informed the trial court that "the previous owners of the subject real estate [had] conveyed their interest to Joy Properties I, LLC prior to the issuance of the Tax Deed"; that Joy Properties had filed a claim for the tax sale surplus and seemed to be "unaware" of Beneficial's claim in that regard; and that it was so notifying Joy Properties. (App.278, 279).

On February 19, 2010, Beneficial filed a response, stating that its mortgage recorded on April 21, 2003 "t[ook] priority" over the deed from the Ostens to Joy Properties recorded on January 28, 2010, and that its "claim to the surplus funds [wa]s superior to that of Joy Properties." (App.281).

On February 22, 2010, Joy Properties filed a motion to intervene, attaching its quitclaim deed and evidence that the January 28, 2010 recording thereof "preceded the recording of the Tax Sale Deed" on February 10, 2010 by Plymouth Park. The trial court granted Joy Properties' motion to intervene.

On March 9, 2010, Joy Properties filed a brief opposing Beneficial's claim to the tax sale surplus. Joy Properties asserted that pursuant to Indiana Code section 6–1.1–24–7(b), it was "entitled to collect the surplus funds as the owner divested of the property." (App.295).

The trial court held a hearing on March 23, 2010 and heard arguments by the parties. On April 6, 2010, the trial court issued its order directing the Auditor to disburse the surplus funds to Joy Properties.

## DECISION

Beneficial argues that the trial court erred when it awarded the tax sale surplus to Joy Properties because Beneficial had a substantial interest of public record in the real estate which was the subject of the tax sale and that its interest was superior to that of Joy Properties. We agree.

■ At the outset, we note that the relevant facts herein are undisputed. We further note that the action in this case was essentially one for declaratory judgment. *See Lake County Auditor v. Burks,*

802 N.E.2d 896 (Ind.2004) (seeking declaratory judgment of entitlement to tax sale surplus); *see also Fawcett v. Gooch,* 708 N.E.2d 908, 910 (Ind.Ct.App.1999) (in declaratory judgment action, court determines specific rights, duties, and obligations of parties). Declaratory orders have the force and effect of a final judgment, and are reviewed in the same manner as other judgments. *Johnson v. Johnson,* 920 N.E.2d 253, 255 (Ind.2010).

Joy Properties properly notes that this matter involves provisions of the Indiana Code, and the interpretation of statutory provisions is a question of law. *See, e.g., Tooley v. State,* 911 N.E.2d 721, 724 (Ind. Ct.App.2009), *trans. denied.* Appellate review of a question of law is de novo. *State Bd. of Tax Comm'rs v. Ispat Inland, Inc.,* 784 N.E.2d 477, 480 (Ind.2003). As we consider this question of law in the matter before us, however, we are mindful of our Supreme Court's admonition to "give a statute practical application by construing it in a way favoring public convenience and avoiding absurdity, hardship, and injustice." *Merritt v. State,* 829 N.E.2d 472, 475 (Ind.2005).

We begin by tracing the legislative history of the statute at issue, as well as the opinions applying the changing statute. The Indiana Code provides that after a tax sale, the county treasurer "shall apply" the amount paid to taxes, assessments, penalties, costs, and other delinquent property taxes; thereafter, any balance is to be placed in a tax sale surplus fund. Ind. Code § 6–1.1–24–7(a). The statute *prior to July 1, 2001* further provided that the

(1) owner of record of the real property at the time the tax deed is issued who is divested of ownership by the issuance of the tax deed; or

(2) tax sale purchaser or purchaser's assignee, upon redemption of the tract or item of real property;

(3) person with a substantial property interest of public record, as defined in section 1.9 of this chapter and as evidenced by the issuance of a tax deed to a tax sale purchaser:

    (A) having a population of more than two hundred thousand (200,000) but less than four hundred thousand (400,-000)

    (B) having a consolidated city; or

    (C) in which the county auditor and the county treasurer have an agreement under I.C. 6–1.1–25–4.7;

may file a verified claim for money which is deposited in the tax sale surplus fund. If the claim is approved by the county auditor and the county treasurer, the county auditor shall issue a warrant to the claimant for the amount due.

*Burks,* 802 N.E.2d at 898 (quoting former I.C. § 6–24–7(b)). Effective July 1, 2001, there was no subsection (3)—authorizing a claim by a person with a substantial property interest of public record. *Id.* at 899 (citing 200 Ind. Acts 139, Sec. 6). Thus, this statutory provision now only authorizes a claim by the

(1) owner of record of the real property at the time the tax deed is issued who is divested of ownership by the issuance of a tax deed; or

(2) tax sale purchaser or purchaser's assignee, upon redemption of the tract or item of real property.

. . . .

I.C. § 6–1.1–24–7(b).

*Burks* expressly agreed with the holding of *Brewer v. EMC Mortgage Corp.,* 743 N.E.2d 322, 326 (Ind.Ct.App.2001), *trans. denied,* that former subsection (b)(3) provided "one route, but not the only route to recover a surplus," and was "an administrative alternative to the remedy of a lawsuit." *Id.* Thus, our Supreme Court con-

cluded that the statute "does not purport to provide an exhaustive list of persons who may claim a tax sale surplus." *Burks*, 802 N.E.2d at 899.

■ Subsequently, in *CANA Investments, LLC v. Fansler*, 832 N.E.2d 1103, 1105 (Ind.Ct.App.2005), we noted that *Brewer* "held that a person with a substantial interest in real property sold at a tax sale is not limited to the administrative procedure set forth in Indiana Code Section 6–1.1–24–7 as a route for claiming a tax sale surplus," a holding which had been "approved by our supreme court" in *Burks*. In *CANA*, we concluded that pursuant to *Brewer* and *Burks*,

> only the owner, at the time of a tax sale, of real estate sold at a tax sale and the tax sale purchaser may use the administrative procedure provided by the statute to claim a tax sale surplus, but the administrative procedure is not the only avenue for making such a claim.

832 N.E.2d at 1107. Accordingly, persons "with an interest in the real estate, including those who did not own the real estate at the time of the tax sale or who did not purchase the real estate at the tax sale, may assert a claim for a tax sale surplus *directly with the trial court.*" *Id.* (emphasis added).

■ In *CANA*, National City Loan Services, Inc. "had a substantial interest in the real estate by virtue of its foreclosure judgment," a judgment which "was a lien against the real estate subject to the tax sale." *Id.* Joy Properties argues that such is a "glaring point of distinction from *CANA* to the case at bar." Joy Properties' Br. at 8. However, we decline its invitation to find that distinction dispositive here. Just as National City's judgment lien in *CANA* was extinguished by the tax sale deed, here Beneficial's mortgage lien against the Castle Drive real estate was extinguished by the tax sale

deed, and here, too, the lien followed the proceeds of the sale, attached to the tax sale *surplus*, and has priority over the interest conveyed to Joy Properties. *See CANA*, 832 N.E.2d at 1107–08; *see also, Moore v. Boxman*, 144 Ind.App. 252, 245 N.E.2d 866, 869 (1969) (proceeds of a voluntary or involuntary sale of secured property take the place of that property, and the security interest attaches thereto).

The case law establishes that the statutory provision at issue provides an administrative procedure for disbursement of a tax sale surplus, but this procedure is not the *only* method for a determination of a substantial interest in the property. Alternatively, a claimant other than one identified in the statute may pursue disbursement of the tax sale surplus in the trial court. Having done so, we agree with Beneficial that the issue to be determined is which claimant has the more substantial interest in the real estate.

It is undisputed that Beneficial's mortgage was duly recorded on April 21, 2003. It is further undisputed that the Ostens not only failed to pay their property taxes but also were in default on their mortgage, owing a balance that greatly exceeded the tax sale surplus held by the Auditor. Hence, Beneficial had a substantial interest in the real estate prior to the issuance of the tax sale deed. Joy Properties acquired its interest in the real estate by a quitclaim deed executed by the Ostens after they had failed to make mortgage payments to Beneficial for more than a year; and they had failed to redeem the real estate during the statutory one-year period following Allen County's tax sale of real property due to the owners' failure to pay real estate taxes. Thus, at the time of the conveyance to Joy Properties by the Ostens, the interest conveyed was subject to the issuance of a tax deed to Plymouth Park and to Beneficial's recorded security

interest.[1] In other words, the interest conveyed to Joy Properties by the Ostens is significantly less substantial than and inferior to the interest of Beneficial.

An action for declaratory judgment is generally equitable in nature, although it may take on the color of either equity or law, depending on the issue presented. 10 I.L.E., *Declaratory Judgments* § 15 (2005). Equity cannot acquiesce in a party's pursuit of "unconscionable results," *Skendzel v. Marshall,* 261 Ind. 226, 301 N.E.2d 641, 650 (1973), and as noted above, the Ostens had been provided notice of Beneficial's claim to the tax sale surplus more than a month before they executed the quitclaim deed to Joy Properties. Further, equity looks to substance rather than form, 12 I.L.E., *Equity* § 17 (2009), and equity seeks the avoidance of a windfall, *Neu v. Gibson,* 928 N.E.2d 556, 560 (Ind.2010).

We find that the facts here establish that Beneficial has a more substantial interest in the real estate, and that equity requires disbursement of the tax surplus funds to Beneficial. Therefore, the trial court erred in ordering disbursement to Joy Properties and we reverse.

Reversed.

NAJAM, J., and BAILEY, J., concur.

---

1. Joy Properties reminds us of *CANA's* statement that "National City's lien against the real estate was extinguished by the execution of the tax deed." 832 N.E.2d at 1107. As Beneficial properly notes, however, by law, both Beneficial's mortgage lien and Joy Property's interest in the real estate were extinguished by the tax deed. *See* I.C. § 6–1.1–25–4.6(g) ("tax deed ... vests in the grantee an estate in fee simple absolute, free and clear of all liens and encumbrances created or suffered before or after the tax sale....").