# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 30 2018, 9:17 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Megan L. Craig
John R. Craig
Craig & Craig, LLC
Crown Point, Indiana

### IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the 2013 Lake County, Indiana Real Estate Tax Sale: | May 30, 2018 |
| | Court of Appeals Case No. 45A05-1711-MI-2674 |
| Jennifer Brozak, | Appeal from the Lake Circuit Court |
| *Appellant-Respondent,* | |
| and | The Honorable Marissa J. McDermott, Judge |
| Barden Procurement Group, LLC, | The Honorable George C. Paras, Judge |
| *Respondent,* | The Honorable Alice A. Kuzemka, Magistrate |
| v. | Trial Court Cause No. 45C01-1308-MI-129 |
| Wintering, LLC, | |
| *Appellee-Petitioner,* | |

and

BMO Harris Bank, NA,
*Appellee-Petitioner/Intervenor*

**Crone, Judge.**

## Case Summary

Jennifer L. Brozak appeals the trial court's order, issued on October 6, 2016, that determined priority to and disbursement of tax sale surplus funds following the tax sale of certain Lake County property that was owned by her. Brozak asks that we vacate the October order and reinstate one of the court's prior orders determining priority to and ordering disbursement of the same funds. We decline that request and affirm the court's October final disbursement order.

## Facts and Procedural History

Brozak owned certain real property located in Merrillville ("the Property"). In August 2013, upon application by the Lake County Auditor, the trial court ordered that the Property be sold at tax sale to satisfy taxes, assessments, penalties, and costs due. The Property was sold to Wintering, LLC, ("Wintering") at tax sale on September 24, 2013. Wintering acquired a tax deed to the property on December 12, 2014.

The sale bid and payment for the Property by Wintering exceeded the required minimum bid by the sum of $57,193.80, resulting in tax sale surplus funds. In

January 2015, Brozak entered into an agreement with Braden Procurement Group, LLC ("BPG"), which granted BPG the right to pursue the tax sale surplus funds on her behalf. In exchange for obtaining the funds on Brozak's behalf, BPG would receive ten percent of the net proceeds, or approximately $5719.38. Thus, on March 16, 2015, BPG filed a "Verified Petition for Order Directing the Auditor of Lake County, Indiana to Disburse Tax Sale Surplus." Appellant's App. Vol. 4 at 12. Three days later, FLRC Land Trust #6870 also filed a petition for disbursement of the tax sale surplus funds, stating that it had priority to the funds because it acquired rights to the Property via a quitclaim deed from Brozak. In addition, Wintering petitioned for reimbursement of $700 for taxes accrued between the date of sale of the Property and the end of the redemption date.

[4] A hearing on the petitions for disbursement was held on February 2, 2016. On February 5, and before the trial court had issued any decision, BMO Harris Bank, NA ("BMO Harris"), filed an emergency motion to intervene as a petitioner as of right and a request for the trial court to freeze the tax surplus funds pending a determination of BMO Harris's entitlement to those funds. BMO Harris claimed priority over the tax sale surplus funds as to Brozak based upon a 2007 recorded mortgage on the Property and a judgment lien obtained by foreclosure against Brozak in March of 2014.

[T]hereafter, on April 5, 2016, the trial court issued two orders.[1] One order, which was based on the February hearing, purported to determine priority to and disburse the tax sale surplus funds as follows: $700 to Wintering, $5719.38 to BPG, and $50,774.42 to Brozak.[2] The other order granted BMO Harris's emergency motion to intervene and ordered the Lake County Auditor to freeze the tax sale surplus funds until further determination by the court. The trial court held a hearing on July 14, 2016. During that hearing, the parties argued about the implications of the two April 2016 orders. The trial court took the matter under advisement and, on October 6, 2016, entered a final order lifting the freeze and disbursing the tax sale surplus funds as follows: $700 to Wintering, $5719.38 to BPG, and $50,774.42 to BMO Harris.

Brozak filed a motion to correct error asserting that the trial court's April 2016 disbursement order was a final judgment and that neither BMO Harris, nor any other party, ever filed a motion to correct error or a notice of appeal. Therefore, she argued, the trial court was without authority to enter the October 2016 disbursement order. Following a hearing, the trial court entered its order denying the motion to correct error. Specifically, the trial court found in relevant part,

> [T]he conflicting court actions of April 5, 2016 resulted in jurisdiction continuing with this present court, which it exercised in conducting the July 14, 2016 hearing to determine priority of

[1] Neither order is time-stamped, but both orders were issued on the same day under the same cause number.

[2] The court deemed FLRC's deed and interest in the Property void.

> claims, and in issuing the order on the priority of claims of October 6, 2016, which order contradicted, and thereby set aside, its previously entered April 5, 2016 order.

*Id*. at 47. This appeal ensued.

## Discussion and Decision

We begin by acknowledging that no party has filed an appellee's brief. Where an appellee fails to file a brief, we do not undertake to develop arguments on that party's behalf; rather, we may reverse upon a prima facie showing of reversible error by the appellant. *Morton v. Ivacic*, 898 N.E.2d 1196, 1199 (Ind. 2008). Prima facie error is error "at first sight, on first appearance, or on the face of it." *Front Row Motors, LLC v. Jones*, 5 N.E.3d 753, 758 (Ind. 2014). This "prima facie error rule" relieves this Court from the burden of controverting arguments advanced for reversal, a duty which remains with the appellee. *Simek v. Nolan*, 64 N.E.3d 1237, 1241 (Ind. Ct. App. 2016).

This Court has stated that a petition seeking tax sale surplus funds is essentially an action for declaratory judgment. *Beneficial Ind., Inc. v. Joy Props., LLC*, 942 N.E.2d 889, 891-92 (Ind. Ct. App. 2011) (citing *Lake Cty. Auditor v. Burks*, 802 N.E.2d 896 (Ind. 2004)), *trans. denied*. In a declaratory judgment action, the trial court determines the specific rights, duties and obligations of the respective parties at the time of trial. *Fawcett v. Gooch*, 708 N.E.2d 908, 910 (Ind. Ct. App. 1999). Declaratory orders generally have the force and effect of a final judgment, and are reviewed in the same manner as other judgments. *Johnson v. Johnson*, 920 N.E.2d 253, 255 (Ind. 2010).

[9] The crux of Brozak's argument on appeal is that the trial court has issued dueling declaratory final orders regarding the distribution of the tax sale surplus funds, one in April 2016 which granted her a large portion of the funds, and one in October 2016 which granted BMO Harris those funds. She characterizes the October order as an improper "second final judgment" and urges this Court to vacate it. Appellant's Br. at 9. We disagree with Brozak and decline to do so.

[10] It is well settled that trial courts have ample authority to alter, amend, or modify their judgments any time before a motion to correct error is required to be made, or with or as part of a motion to correct error. *Deen-Bacchus v. Bacchus*, 71 N.E.3d 882, 885 (Ind. Ct. App. 2017) (citing Ind. Trial Rule 52(B)); *see also State ex rel. Rans v. St. Joseph Super. Ct. No. 2*, 246 Ind. 74, 78, 201 N.E.2d 778, 779-80 (1964) ("[A] court may, upon motion to reconsider or rehear, upon its own motion or the suggestion of a party, vacate, set aside, amend or modify a ruling entered in the same term of court, since such a matter is *in fieri*"). Here, on the same day it issued its order determining priority to and disbursement of the tax sale surplus funds as between Brozak and certain petitioners, the trial court also granted BMO Harris's motion to intervene as of right and froze those same funds in order for the court to determine priority to and disbursement of the tax sale surplus funds as between Brozak and BMO Harris. The trial court's order granting the motion to intervene and freezing the tax sale surplus funds was a timely and proper exercise of the trial court's power to reconsider and modify the disbursement of the tax sale surplus funds. That order constituted a clear signal to the parties that the disbursement order issued that same date was

effectively stayed, and the matter remained in fieri pending further determination of the court regarding the ultimate disbursement of the funds.

[11] Contrary to Brozak's assertion, the trial court has issued only one declaratory final order here, that being the October 2016 disbursement order. Significantly, the relevant facts supporting that final order are undisputed. In its emergency motion to intervene, BMO Harris informed the trial court that it holds a judgment against Brozak in the amount of $108,587.37 under trial court cause number 45D05-1302-MF-54, based upon its foreclosure of a mortgage secured by the Property. A copy of the foreclosure judgment and mortgage was attached to BMO Harris's motion as Exhibit A. Appellant's App. Vol. 4 at 30. These facts are not, and have never been, contested by Brozak.[3] Accordingly, there is no question that BMO Harris has "a substantial interest in the real estate by virtue of its foreclosure judgment," and that judgment has "priority over the interest of the owner, [Brozak]." *CANA Invs., LLC v. Fansler*, 832 N.E.2d 1103, 1107-08 (Ind. Ct. App. 2005). The judgment "was a lien against the real estate subject to the tax sale," and "followed the proceeds of the sale and attached to the [tax sale] surplus." *Id*. Brozak has failed to show any error, much less prima facie error, in the trial court's final order granting BMO Harris the lion's share of the tax sale surplus funds.

---

[3] Indeed, Brozak did not object to BMO Harris's motion to intervene nor request to bring an interlocutory appeal from the trial court's order granting that motion. Similarly, Brozak did not challenge the validity of BMO Harris's judgment lien at any time during the July 2016 hearing, or during the subsequent hearing on her motion to correct error.

[12] We further note that an action for declaratory judgment is generally equitable in nature, and equity seeks the avoidance of a windfall. *Beneficial of Ind.*, 942 N.E.2d at 894 (citing *Neu v. Gibson*, 928 N.E.2d 556, 560 (Ind. 2010)). By requesting that we reinstate the trial court's April 2016 disbursement order, Brozak attempts to receive a windfall by obtaining tax sale surplus funds to which BMO Harris undisputedly holds a superior claim. We reject her attempt, and affirm the disbursement of the tax sale surplus funds as provided in the trial court's October 2016 final order.

[13] Affirmed.

Bailey, J., and Brown, J., concur